IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| NCS MULTISTAGE INC.<br>NCS MULTISTAGE, LLC,<br><br>    Plaintiffs,<br><br>                vs.<br><br>ENTECH SOLUTIONS, AS<br><br>    Defendant. | CIVIL ACTION NO. **6:22-cv-1316**<br><br><br>JURY TRIAL DEMANDED |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Plaintiffs NCS Multistage Inc. and NCS Multistage LLC (collectively "NCS" or "Plaintiffs"), by and through the undersigned counsel, hereby bring their Complaint for Patent Infringement against Defendant Entech Solutions, AS ("Entech" or "Defendant").

## NATURE OF THE ACTION

1. This is an action for patent infringement. NCS alleges that Entech infringes the following NCS Patent, which is attached hereto as **Exhibit A**:

- U.S. Patent No. 10,465,445 ("the '445 Patent")

2. NCS alleges that Entech indirectly infringes the '445 Patent by inducing its U.S. customer Halliburton to make, use, offer for sale, and/or sell the infringing AirGlide™ Floatation Sub (hereafter "AirGlide") in the United States, a system used in downhole well construction, and by encouraging U.S. customers to use the AirGlide to perform infringing floatation methods. NCS further alleges that Entech contributes to infringement of the '445 Patent by shipping components to the United States, including Texas, that have no substantial non-infringing uses and are specifically made to be assembled into the infringing AirGlide. NCS seeks damages, injunctive, and other relief for Entech's infringement of the '445 Patent.

## THE PARTIES

3. Plaintiff NCS Multistage Inc. is a Canadian corporation with a place of business at 700, 333-7th Ave SW Calgary, AB T2P 2Z1.

4. Plaintiff NCS Multistage, LLC is a Texas corporation with a place of business at 19350 State Highway 249, Suite 600, Houston, TX 77070.

5. Upon information and belief, Defendant Entech is a Norwegian company with a principal place of business at Storanest 12, 5260 Indre Arna, Norway.

## JURISDICTION AND VENUE

6. This action for patent infringement arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et. seq*. This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1338.

7. This Court has specific personal jurisdiction over Entech because Entech purposefully directed its activities at Texas, the claim arises out of Entech's activities with Texas, and the assertion of personal jurisdiction is reasonable and fair. Entech conducts business in the State of Texas. Upon information and belief, Entech created and designed the infringing AirGlide. Entech entered into a license and distribution agreement with Halliburton for the AirGlide. Entech provides Halliburton in Texas the assembly drawings and manufacturing specifications for the AirGlide. Halliburton uses those drawings and specifications to make, assemble, and sell the AirGlide in the United States, including substantial sales in this District. Entech instructs or encourages U.S. customers to perform infringing floatation methods in this District, including in the Permian Basin. Furthermore, Entech ships to Halliburton in Texas parts specifically made for the AirGlide. Halliburton assembles those parts into the infringing AirGlide.

8. This Court has general personal jurisdiction over Entech because it has availed itself of the rights and benefits of the laws of Texas, has derived substantial revenue from the sales of the infringing AirGlide in Texas, and has systematic and continuous business contacts with Texas.

9. Alternatively, this Court has personal jurisdiction over Entech pursuant to Fed. R. Civ. P. 4(k)(2).

10. Venue is proper in this District under 28 U.S.C. §§ 1391. As a foreign defendant, Entech may be sued in any judicial district in the United States. 28 U.S.C. § 1391(c)(3). Moreover, Entech has committed acts of indirect infringement in this District, as explained above in ¶7, incorporated herein by reference.

## BACKGROUND

*A. NCS*

11. NCS is a leading technology and service company that specializes in multistage well construction and completions. NCS Multistage Inc. initially formed in Canada in 2006 as NCS Oilfield Services and began developing downhole completion tools for conventional and unconventional completions. In 2008, NCS Multistage, LLC was incorporated in the United States and established its worldwide headquarters in Houston, TX. Today, NCS has 20 offices in the U.S. and Canada, and operates in Argentina, the Middle East and the North Sea, with a record of over 12,000 field successes.

12. NCS is an expert in developing downhole tools like its AirLock® buoyancy system, a "casing float tool" covered by the '445 Patent. NCS marks its AirLock® system with the web address of its patent notice which contains the '445 Patent number. *See*

https://www.ncsmultistage.com/patents/. NCS started marking its Airlock® system with the '445 Patent the day the patent issued (i.e., November 5, 2019).

13. As a casing string is run into the horizontal portion of a wellbore, the casing string can drag on the bottom of the wellbore due to its weight and gravity. This makes it challenging to run the casing to the target zone. The AirLock® system is designed to create buoyancy in the casing string, so that the string is lighter and it is easier to run the casing into the wellbore. This is called "floating the casing" into the wellbore. Below is a picture of the patented Airlock® system.



14. The AirLock® system (above in green) is a tubular body attached to the casing string (above in grey). Within the tubular body is a rupture disc (above in white). In use, the portion of the casing string above the rupture disc is filled with fluid. The portion of the casing string below the rupture disc is filled with air, which creates buoyancy in the lower portion of the string. This enhanced buoyancy reduces sliding friction up to 50% while the enhanced weight of

4

the vertical section provides the force needed to push the string all the way to the toe of the well. After the casing string is run to the target zone, hydraulic pressure is applied from the surface, which causes the rupture disc to disengage from the tubular body walls and shatter. This process restores the internal diameter of the casing string so that tubing tools can be freely conveyed through the casing string. More than 12,000 AirLock® systems have been installed, and casing has landed on more than 99.9% of first attempts.

15.  NCS invests substantial resources in innovation and the protection of its valuable intellectual property. To date, NCS has worldwide approximately 106 issued patents, including the '445 Patent that covers its AirLock® system, and 106 pending patent applications.

**B.  Entech**

16.  Upon information and belief, Entech is a Norwegian oil and gas technology company. Entech offers for sale through its website, entechteam.com, various oil and gas technologies and solutions.

17.  Upon information and belief, Entech designed the AirGlide, including creating the assembly drawings and manufacturing specifications for the AirGlide. Entech manufactures components specifically designed for the infringing AirGlide (hereafter "Entech Components").

18.  Upon information and belief, Entech entered into a license and distribution agreement with Halliburton, where Halliburton is authorized to make, use, sell, and/or offer for sale the infringing AirGlide. Pursuant to the agreement, Entech sends the Entech Components, the assembly drawings, and manufacturing specifications for the AirGlide to the United States, including to Halliburton in Texas. Upon information and belief, Halliburton manufactures or has third parties manufacture certain components of the AirGlide (hereafter the "Halliburton Components"), according to Entech's manufacturing specifications. Halliburton assembles

AirGlides, according to Entech's assembly drawings, using the Entech Components and Halliburton Components.

19. Upon information and belief, Halliburton offers for sale and sells the infringing AirGlide to its customers in the United States, including to customers in this District. Halliburton's customers use the AirGlide to float casing string in a wellbore.

20. An image of the AirGlide from Halliburton's marketing materials is depicted below.



(*See* https://cdn.brandfolder.io/BQOGXPBX/at/7b244wpsn77xtzktj85k7m/2022-MKTG-CMT-13672_AirGlide_Sales_Data_Sheet.pdf).

21. According to Halliburton's marketing materials, the AirGlide is a casing floatation device, used to create buoyancy in the casing string that makes it easier to run casing through the horizontal portion of a wellbore.  The AirGlide is a tubular body that has a glass barrier disc.  After the casing is landed in the target zone, the glass barrier is ruptured by applying hydraulic pressure from the surface, which restores the internal diameter of the casing string.

C. *Entech's Notice of NCS's Infringement Concerns*

22. On October 24, 2022, NCS' counsel sent a letter to Thomas Rooney, Senior IP Counsel for Halliburton, notifying Halliburton of the '445 Patent and NCS' concern that Halliburton's AirGlide infringed the '445 Patent.

23. On December 1, 2022, Entech's counsel contacted NCS's counsel, informing NCS that Entech supplies AirGlide components to Halliburton and that Entech wished to negotiate a license to the '445 Patent. The parties have been unable to reach an agreement on the license.

## COUNT 1: INFRINGEMENT OF THE '445 PATENT

24. The allegations of paragraphs 1-23 of this Complaint are incorporated by reference as though fully set forth herein.

25. NCS Multistage Inc. owns by assignment the entire right, title, and interest in the '445 Patent.

26. NCS Multistage, LLC is the exclusive licensee of the '445 Patent.

27. The '445 Patent was duly and legally issued by the United States Patent and Trademark Office on November 5, 2019 and is entitled "Casing Float Tool." A true and correct copy of the '445 Patent is attached hereto as **Exhibit A**.

28. The '445 Patent is valid and enforceable under the laws of the United States.

29. Entech has indirectly infringed and is indirectly infringing at least claims 28-29 of the '445 Patent in violation of 35 U.S.C. § 271 *et seq.*

30. With knowledge of the '445 Patent, and having written notice from NCS that the AirGlide infringes the '445 Patent, Entech has induced and is inducing Halliburton to directly infringe the '445 Patent by directing, causing, instructing and/or encouraging Halliburton to manufacture and/or assemble, use, offer for sale, and/or sell the infringing AirGlide. For example, as shown in the claim chart attached as **Exhibit B**, the AirGlide meets every element of at least claims 28-29 either literally or under the doctrine of equivalents. Upon information and belief, Entech is the designer of the infringing AirGlide. Entech created the assembly drawings

and manufacturing specifications for the AirGlide, and provided them to Halliburton. Entech also ships the Entech Components to Halliburton. Halliburton uses the Entech Components and Entech's assembly drawings and manufacturing specifications to manufacture and assemble the AirGlide in the United States. Halliburton then offers to sell and/or sells the AirGlide to customers in the United States.

31.     With knowledge of the '445 Patent, Entech has contributed and is contributing to infringement of at least claims 28-29 of the '445 Patent in violation of 35 U.S.C. § 271 *et seq*. Entech ships to Halliburton the Entech Components, which are especially made or adapted for use in the infringing AirGlide. These components are a material part of the AirGlide and the '445 Patent, are not a staple article or commodity of commerce suitable for substantial non-infringing uses, and have no substantial non-infringing uses. Halliburton assembles those components into the infringing AirGlide.

32.     Entech's infringement of the '445 Patent has been and continues to be willful and deliberate. Upon information and belief, Entech has been on notice of the '445 Patent and its infringement since at least December 1, 2022, when Halliburton contacted Entech to inform Entech of NCS's infringement concerns. Moreover, upon information and belief, Entech is aware that NCS secured two jury verdicts of infringement and no invalidity of the '445 Patent in 2022, against parties that make virtually identical flotation subs. Notwithstanding the above, upon information and belief, Entech has deliberately and/or intentionally continued to engage in the above-described infringing acts despite a known or obvious risk of infringement of the '445 Patent.

33.     As a result of Entech's acts of infringement, NCS has suffered and will continue to suffer damages in an amount to be proved at trial.

**PRAYER FOR RELIEF**

WHEREFORE, NCS prays for the following relief:

A.    A judgment that Entech has infringed the '445 Patent;

B.    An order enjoining Entech, its officers, agents, employees, and those persons in active concert or participation with any of them, and Entech's successors and assigns, from continuing to infringe the '445 Patent;

C.    An order awarding NCS its damages pursuant to 35 U.S.C. § 284, including supplemental damages for any continuing post-verdict infringement up until entry of final judgment, with an accounting, as needed;

D.    An order finding that Entech's infringement has been willful and increasing the damages awarded to NCS to three times the amount assessed pursuant to 35 U.S.C. § 284;

E.    An order finding that this case is exceptional within the meaning of 35 U.S.C. § 285 and awarding NCS its attorneys' fees;

F.    An order awarding NCS prejudgment and post-judgment interest on its damages;

G.    An order awarding NCS its costs;

H.    An order awarding NCS an ongoing royalty pursuant to 35 U.S.C. §283 for any continuing post-judgment infringement, with an accounting, as needed;

I.    An order awarding NCS any other and further relief as the Court deems proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, NCS hereby demands a jury trial on all issues so triable.

Dated: December 30, 2022            Respectfully submitted,

                                                   */s/ Domingo M. LLagostera*
BLANK ROME LLP
**Domingo M. LLagostera**
(*Attorney-in-charge*)
State Bar No. 24070157
Tel.: (713) 632-8682
DLLagostera@BlankRome.com
717 Texas Avenue, Suite 1400
Houston, TX 77002

**Attorneys for Plaintiffs NCS Multistage Inc. & NCS Multistage, LLC**